UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-403-KSF

SHIRLEY J. JONES                                                                                          PLAINTIFF

v.                                               **OPINION & ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                               DEFENDANT

* * * * * * * * * * *

This is an action challenging the final decision of the Commissioner of Social Security denying the claim filed by the plaintiff, Shirley J. Jones, for Supplemental Security Income. Currently before the Court are the parties' motions for summary judgment. For the reasons set forth below, the decision of the Commissioner will be AFFIRMED.

I.      PROCEDURAL AND FACTUAL BACKGROUND

Jones filed her application for benefits in February 2006. [TR 51-56] This claim was denied initially and upon reconsideration. [TR 33-34, 40-43, 44-47] Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on August 28, 2007. [TR 375-95] Subsequent to that hearing, the ALJ entered his decision denying Jones' claim for benefits. [TR 10-23] The Appeals Council denied Jones' request for review on September 28, 2007, and this timely appeal followed. [TR 5-7, 8-9]

At the time the ALJ issued his decision, Jones was 45 years old. [TR 51] She has a ninth grade education, and past work experience as a sewing machine operator and as an inspector in a sewing factory. [TR 65, 67-73] She alleges disability beginning July 1, 2005 due to back pain,

1

breathing problems, heart trouble, hearing loss, anxiety, depression, and borderline intellectual functioning. [TR 51, 60-61]

After a review of medical evidence and the testimony at the hearing, the ALJ determined that Jones had severe chronic obstructive pulmonary disease, with a history of bronchitis, lumbar degenerative disc disease, as well as adjustment disorder with anxiety and depression, but that she did not have an impairment or combination of impairments listed in, or medically equal to one listed in the regulations. [TR 15, 18] Nevertheless, the ALJ concluded that Jones had retained the residual functional capacity ("RFC") to perform the physical exertional and nonexertional requirements of medium work that did not require any climbing, ladders, ropes, scaffolds and no exposure to loud noises, hazardous machinery or pulmonary irritants. The ALJ further restricted Jones to work that involved no more than simple one or two step instructions and required no more than a severely limited, but not precluded, ability to deal with stress and detailed instructions. [TR 19-20]

Based on testimony from the vocational expert ("VE"), the ALJ found that Jones could perform various jobs including production laborer, inspector, and production packager. [TR 23] Consequently, the ALJ found that Jones was not disabled as defined in the Social Security Act.

**II.   ANALYSIS**

    **A.   THE PARTIES' ARGUMENTS**

In support of her motion for summary judgment, Jones argues that the ALJ erred by relying on VE testimony which assumed a residual functional capacity that was not reflective of the evidence on which the ALJ claims to have relied, namely a consultative psychological examination by Dr. Bennett. [TR 249] Jones further asserts that the hypothetical question to the VE did not assume the restrictions assessed by the state agency mental health reviewers; specifically, Dr. Jacobson and Dr.

Perritt, who assessed moderate restrictions in Jones' ability to interact appropriately with the general public, respond appropriately to changes in the work setting, social functioning, and maintaining concentration, persistence and pace. [TR 256, 260]

The Commissioner disagrees, noting that the ALJ was not required to accept all of Dr. Bennett's restrictions, inasmuch as she was a one-time consultative examiner. With respect to Dr. Jacobson and Dr. Perritt, the state agency psychologists who only reviewed Jones' medical records, the Commissioner contends that the ALJ afforded appropriate weight to their restrictions in light of contradictory evidence in the record.

  **B.**  **JONES' MENTAL HEALTH TREATMENT**

The issue before the Court, then, is whether the ALJ properly assessed Jones' mental RFC. In order to properly analyze the parties' arguments, the relevant records relating to Jones' mental health are summarized below.

- \* February 8, 2006 (Mountain Comprehensive Health Corporation ("MCHC") - Dr. Almusaddy): First visit. Jones lost her husband few weeks ago to lung cancer and COPD. Depressed. Given Lexapro and Xanax. [TR 219-20]

- \* February 26, 2006 (Appalachian Regional Healthcare - Harlan ("ARH-Harlan")): ER visit for anxiety attack based on recent death of husband. Prescribed Ativan and discharged home. [TR 175-79]

- \* February 27, 2006 (MCHC/Almusady): Clinic visit for follow up. Doing okay on anxiety/depression meds. [TR 217-18]

- \* March 5, 2006 (MCHC/Almusaddy): Clinic visit for follow up. Lesion drained and cultured. [TR 215-16]

- \* March 22, 2006 (MCHC/Almusaddy): Clinic visit for follow up on lesion w/MSRA. [TR 213-14]

- \* April 5, 2006 (MCHC/Almusaady): Clinic visit for follow up on lesion w/MSRA. Continued on anxiety meds. [TR 211-12]

- \*   April 14, 2006 (MCHC/Almusaddy): Clinic visit for follow up. Complains of anxiety, hypertension and allergies. [TR 201]

- \*   April 22, 2006 (Dr. Croce consultation): Physical exam within normal limits. Orthopedic exam without limitations. Recommends formal psychiatric evaluation. [TR 243-48]

- \*   May 3, 2006 (MCHC/Almusaddy): Clinic visit for follow up for anxiety and depression. Doing okay on medicine. [TR 209-10]

- \*   May 13, 2006 (Bennett, Psy.D., consultative examination): Diagnosed adjustment disorder w/anxiety and depression, borderline intellectual functioning suspected, current GAF 50. [TR 249-55]

- \*   May 22, 2006 (Jacobson, Ph.D.): Mental RFC - moderately limited in ability to understand, remember and carry out detailed instructions, ability to interact appropriately with the general public, and ability to respond appropriately to changes in the work setting. Otherwise not significantly limited. [TR 256-59, 265-78]

- \*   June 2, 2006 (Dr. Swan review): great weight to Dr. Croce's opinion. [TR 294]

- \*   July 6, 2006 (MCHC/Almusaddy): Clinic visit for follow up. No new complaints. [TR 207]

- \*   August 25, 2006 (Dr. Rawlings review): agree with initial decision to deny benefits. No residual effects from apparent stroke. [TR 296]

- \*   August 25, 2006 (Perritt, Ph.D.): Mental RFC - moderately limited in ability to understand, remember and carry out detailed instructions, ability to interact appropriately with the general public, and ability to respond appropriately to changes in work setting. Otherwise not significantly limited. [TR 260-63, 280-93]

- \*   January 4, 2007 (Dr. Spangler consultative examination): Depressive disorder, anxiety disorder, low borderline intelligence, erratic concentration, mild on medication, marginal reading and math skills (4th grade), GAF 55. Guarded prognosis. Needs regular mental health treatment. [TR 229-38]

- \*   March 12, 2007 (ARH-Harlan): Admitted after ER visit for complaints of increasing depression and suicidality. Treated with Lexapro, Klonopin, Neurotin, Abilify and Celexa. Diagnosed with bipolar disorder, depression. Good progress in her mood, and discharged March 24, 2007. GAF 60. [TR 335-68]

* April 2, 2007 (Cumberland River Comprehensive Care Center ("CRCCC")): Clinic visit. Complains of depression. Referred to Dr. Raza. [TR 315-17, 330-32]

* April 4, 2007 (CRCCC/Raza): Clinic visit. Feels overwhelmed. Diagnosed with Major Depression, recurrent type with psychotic features, GAF 65 (or 56).[1] [TR312-14, 328-29]

* April 23, 2007 (CRCCC): Clinic visit. Doing a little better, continued symptoms of depression [TR 309, 325-27]

* May 1, 2007 (CRCCC): Clinic visit. Sleep disturbance, feeling shaky, nervous, helpless. [TR 322-24, 333-34]

* May 15, 2007 (CRCCC): Clinic visit. Doing a little better, but still having a hard time. [Tr 320]

**C. DISCUSSION**

Jones first argues that the ALJ elicited flawed testimony from the VE who testified at her hearing. According to Jones, the ALJ's hypothetical question failed to include **all** the impairments assessed by Dr. Bennett, the state agency consultative examiner. Because the administrative record lacks any medical opinion evidence that refutes or discredits Dr. Bennett's opinion, Jones argues that the ALJ's own reading of the medical treatment notes does not constitute substantial evidence sufficient to overcome the deference owed to Dr. Bennett. Second, Jones argues that the hypothetical question to the VE failed to include the restrictions assessed by the state agency reviewing psychologists, Dr. Jacobson and Dr. Perritt.

Dr. Bennett performed her consultative psychological examination of Jones on May 13, 2006. Based on this one-time examination, Dr. Bennett concluded that Jones suffers from Adjustment Disorder with anxiety and depression, and borderline intellectual functioning. She assigned Jones

---

[1]Jones contends that the GAF score of 65 is typographical error based on the fact that Dr. Raza signed a diagnostic impressions forms on the same day which reflects a handwritten GAF of 56.

a GAF score of 50. Furthermore, she noted that Jones' "ability to tolerate stress and pressure of day-to-day employment is affected by the impairment with marked limitations" and that Jones' "capacity to sustain attention and concentration towards the performance of simple repetitive tasks is affected by the impairment with slight-to-moderate limitations." However, she also determined that Jones' "capacity to understand, remember, and carry out instructions towards the performance of simple repetitive tasks is not affected by the impairment" and that her capacity to "respond appropriately to supervision, coworkers, and work pressures in a work setting is not affected by the impairment." [TR 254]

Dr. Jacobson and Dr. Perritt, state agency mental health experts who reviewed Jones' medical record, came to the following conclusion regarding her mental RFC. Specifically, both found that Jones was moderately limited in the ability to understand, remember, and carry out detailed instructions, moderately limited in the ability to interact appropriately with the general public and to respond appropriately to changes in the work setting. [TR 256-63]

Analyzing Jones' claim for disability based on her mental condition, the ALJ determined that Jones should be restricted to work that involves no more than simple, 1 to 2 step instructions and requires no more than a severely limited, but not precluded, ability to deal with stress and deal with detailed instructions. Explaining this mental RFC, the ALJ stated as follows:

> Unfortunately, the medical evidence also fails to substantiate the severity of psychological symptoms alleged by the claimant. She alleges disability beginning in July 2005, but did not express complaints of anxiety and depression until February 2006. Thereafter, she relied on medications prescribed by her primary care provider, and she consistently reported doing "okay" with this rather conservative regimen. There is no evidence of any formal mental health treatment until the claimant was admitted to the hospital in March 2007, and the claimant's Comprehensive Care treatment notes between April and May 2007 reflect some improvement in her symptoms. Moreover, the evidence shows that the claimant lives alone and performs

6

> a wide range of daily activities such as personal care, shopping, cleaning, laundry, shopping, meal preparation and financial management. She has also reported passing her time by going to church and going to Walmart.
>
> After considering the evidence of record, I find that the claimant's medically determinable impairments could be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
> . . .
>
> Regarding the claimant's mental functional capacity, I have considered the opinion of independent examiner Dr. Spangler but find that the functional limitations contained therein are overly restrictive in light of the moderate GAF he assigned to the claimant. I have also considered state agency findings contained in Exhibits 10F through 13F, but in light of the functional limitations identified by consultative examiner Dr. Bennett (Exhibit 9F), only marginal weight is given to the state agency findings. As the limitations imputed by Dr. Bennett (*Id.* at p. 5) are overall consistent with and supported by the longitudinal record, appropriate consideration has been given to the same.

[TR 22].

Jones, however, contends that the ALJ erred by failing to include Dr. Bennett's opinion that she had "marked" limits on her ability to tolerate stress and pressure as well as the further limitations imposed by Dr. Jacobson and Dr. Perritt in his hypothetical question to the VE. While its true that the ALJ may assess a claimant's residual functional capacity for work only after all of the claimant's limitations have been taken into account, the ALJ "is required to incorporate only those limitations [he] accept[s] as credible," *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993).

With respect to the Dr. Bennett's consultative opinion, the ALJ noted that her restrictions were "overall consistent with and supported by the longitudinal record." Therefore, the ALJ stated that "appropriate consideration" has been given to Dr. Bennett's opinion. The ALJ does not, however, suggest that he is relying *in toto* on Dr. Bennett's report. Nor is there any requirement that

the ALJ must accept all of Dr. Bennett's limitations. Unlike a treating source opinion, Dr. Bennett's opinion based upon her consultative examination does not enjoy a deferential status. *See Atterberry v. Secretary of Health and Human Services*, 871 F.2d 567, 572 (6th Cir. 1989)(physician who examined claimant only once was not a treating physician); *Crisp v. Secretary of Health and Human Services*, 790 F.2d 450, 452 (6th Cir. 1986)(an ALJ may reject the opinion of a one-time examining psychologist).

Jones argues that because there is no medical opinion contradicting Dr. Bennett's opinion and restrictions, the ALJ cannot substitute his own judgment in rejecting a portion of Dr. Bennett's restrictions. The ALJ, however, is entitled to rely on evidence contained in the medical record which contradicts Dr. Bennett's findings. An important component of Jones' medical record is the absence of significant mental health treatment on a regular basis. Although Jones was admitted to the hospital in March 2007, the remainder of her mental health treatment amounts to medication prescribed by her primary care doctor. Jones has consistently reported doing "okay" on medications prescribed by her primary care physician. Her activities of daily living further belie her allegations of disabling mental impairments beyond those assessed by the ALJ. Thus, even without a medical opinion contradicting Dr. Bennett's restrictions not included in the ALJ's mental RFC, a review of the entire record reveals substantial evidence in support of the ALJ's mental RFC finding. *See Her v. Commissioner of Social Security*, 203 F.3d 388, 390-91 (6th Cir. 1999) (holding that substantial evidence supported an ALJ's rejection of the uncontradicted opinion from a consulting psychologist). Thus, Jones' argument that the ALJ erred by failing to include all of Dr. Bennett's restrictions in the hypothetical question to the VE must be rejected.

Turning next to Jones' argument that the ALJ was required to include the restrictions found

by the state agency reviewing psychologists, the Court also rejects this argument. There is no requirement that the ALJ accept the conclusions of Dr. Jacobson and Dr. Perritt if they are not supported by the medical record. The opinions of non-examining, state-appointed, psychologists are not entitled to any special weight. While non-examining, state-appointed psycholgists like Dr. Jacobson and Dr. Perritt are viewed as medical experts in the evaluation of the medical issues in disability claims and are to be accorded proper weight under 20 C.F.R. § 416.927, the weight depends on the following factors: (1) examining relationship; (2) treatment relationship (i.e., length, nature, and extent of relationship); (3) supportability by past relevant evidence; (4) consistency with the record as a whole; (5) specialization; and (6) other factors. 20 C.F.R. § 416.927(d); *see Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Dr. Jacobson's and Dr. Perritt's only contact with this matter was their one-time review of Jones' medical record. To the extent their opinions reflect restrictions more limiting that Dr. Bennett's, their findings were neither explained nor supported by medical or clinical findings. The ALJ was therefore entitled to conclude that the restrictions opined by Dr. Jacobson and Dr. Perritt are not entitled to significant weight. 20 C.F.R. § 416.927(d)(3).

Despite all of Jones' arguments to the contrary, none of the progress notes indicate that Jones has functional mental limitations that would prevent her from working. Her conservative treatment pattern belies her complaints of disabling mental health problems. Moreover, there is no evidence in the record that Jones' mental health treatment, consisting primarily of medication prescribed by her primary care doctor, was not working. The burden is on Jones to prove the extent of her impairments, *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987), and the ALJ's determination that she failed to establish any mental impairment greater than that contained in the ALJ's mental RFC as

9

expressed to the VE in the hypothetical is supported by substantial evidence.

### III.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner denying benefits to Jones is AFFIRMED.

This June 4, 2008.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge